763 So.2d 704 (2000)
Calvin ALLEN, Individually, and as Natural Tutor of the Minor Child, Corey Allen, and Wife, Phyllis Allen
v.
George BLANCHARD and Scottsdale Insurance Company, Inc.
No. 99 CA 0277.
Court of Appeal of Louisiana, First Circuit.
March 31, 2000.
*705 Robert P. Cuccia, Houma, for Plaintiffs/Appellants, Calvin Allen, et al.
Albert D. Giraud, Nicholas J. Lorusso, Metairie, for Defendants/Appellees, George Blanchard and Scottsdale Insurance Company.
Before: CARTER and PETTIGREW, JJ., and CLAIBORNE,[1] J. Pro Tem.
*706 CARTER, J.
This is an appeal by Calvin Allen, his minor son, Corey Allen, and his wife, Phyllis Allen (plaintiffs), from a judgment dismissing their claims for damages arising from an accident Calvin Allen suffered at Blanchard's Arena. The trial court granted a motion for summary judgment brought by George Blanchard and Scottsdale Insurance Company (defendants) that proved there were no facts at issue regarding an element of the plaintiffs' burden of proof.

FACTS
On August 3, 1996, Calvin Allen, and his minor son, Corey Allen, attended a rodeo at Blanchard's Arena located at 500 Bayou Blue Road in Houma, Louisiana. Blanchard's Arena was owned and operated by George Blanchard, an insured under a liability policy issued by Scottsdale Insurance Company. Blanchard's Arena is an outdoor facility, although there is covering over the bleacher area. The bleacher area is comprised of wooden boards and welded iron piping.
Calvin Allen was seated in the top row of the bleachers. The top row of bleachers was bordered by a railing, which provided a barrier to keep the spectators from falling. The railing consisted of two pipes measuring one and one-half inches in diameter, which were placed horizontally along the back of the bleachers, approximately eighteen inches apart, one pipe on top of the other pipe. Approximately every ten feet, these pipes were welded to a vertical pipe, which extended all the way to the ground behind the bleachers.
Calvin Allen watched the rodeo while leaning back against the railing. At some point, one of the welds failed, causing the pipes to slide downward. As a result, Calvin Allen lost his balance and fell from the back of the bleachers to the ground approximately twelve feet below. Although he had no broken bones, as a precaution, Calvin Allen was placed on a stretcher and taken to the hospital. The next day, Blanchard, who had prior training as a welder at Avondale Shipyards, repaired the broken weld.
On December 2, 1996, Calvin Allen filed suit against Blanchard and his insurer, Scottsdale Insurance Company, for damages he sustained from his fall. Calvin Allen also asserted a claim on behalf of his minor son, Corey Allen, for negligent infliction of emotional distress, and Phyllis Allen, the wife of Calvin Allen, presented a claim for loss of consortium.
On September 24, 1997, the defendants filed a motion for summary judgment on the basis that there was no issue of material fact regarding whether Blanchard knew or should have known that the weld would fail. After a hearing on the matter, the trial judge granted the defendant's motion for summary judgment. The plaintiffs appeal.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B.
In 1996, the Louisiana legislature amended LSA-C.C.P. art. 966 by adding paragraph A(2), which states in pertinent part:

*707 The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.
The summary judgment law, as amended in 1996, was explained in Hayes v. Autin, 96-287, pp. 6-7 (La.App. 3rd Cir.12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41:
Under the amended statute, the initial burden of proof remains with the mover to show that no genuine issue of material fact exists. However, under Article 966(C), once the mover has made a prima facie showing that the motion should be granted, the burden shifts to the nonmoving party to present evidence demonstrating that material factual issues remain. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. The amendment to Art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed. Rule Civ. Pro. 56(c)....
The Legislature amended LSA-C.C.P. art. 966 in 1997 La. Acts No. 483 §§ 1 and 3, in order to clarify 1996 La. Acts No. 9 § 1 of the First Extraordinary Session of 1996 and to legislatively overrule all cases inconsistent with Hayes v. Autin. See 1997 La. Acts No. 483 § 4. Act 483 repealed sections (F) and (G), and amended sections (C) and (E) to read as follows:
C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
. . . .
E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case.
The retroactive application of the amendment is evidenced by the Legislature's clear expression in § 4 of the Act. The amendment also sought to rectify the misapplication of the article by various state courts in clarifying what the original amendment purported to enact. See Reichert v. State, Department of Transportation and Development, 96-1419 and 96-1460, p. 7 (La.5/20/97), 694 So.2d 193, 199. In our determination of whether the trial court properly granted the motions for summary judgment, we will apply LSA-C.C.P. art. 966 as amended.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo v. Walker, 97-2371, p. 4 (La.App. 1st Cir.11/6/98), 722 So.2d 86, 88, writ denied, 98-3030 (La.1/29/99), 736 So.2d 840. The plaintiffs' petition alleged Blanchard was negligent in failing to properly inspect, maintain, and monitor the premises. The petition also alleged the defendants were liable for the condition/ruin of the structure as specified by LSA-C.C. arts. *708 2322 and 660.[2] The defendants' motion for summary judgment was based on facts that illustrated that Blanchard had no knowledge of any defect in the bleacher welds, and that he had taken reasonable care to discover potential problems in the bleachers prior to the event Calvin Allen attended.
In support of their motion for summary judgment, the defendants introduced Calvin Allen's answers to supplemental interrogatories, which indicated that the deposition of Calvin Allen would provide the facts on which they charged Blanchard knew or should have known of the alleged defective condition on his premises. However, the excerpts of Calvin Allen's deposition indicated that he had no evidence that prior to his accident there was any indication that either the rail he leaned against or the weld, which failed, had any noticeable problem. Calvin Allen further testified that he had no information that would indicate Blanchard had any pre-accident knowledge that anything was wrong with the rail or the weld. Finally, Calvin Allen testified that he had no knowledge of what Blanchard could have done to prevent this accident.
At the hearing on the motion for summary judgment, the defendants also introduced the deposition of George Blanchard. Blanchard owned Blanchard's Arena for approximately eight years preceding this accident and never had any problems with the bleachers or railings prior to Allen's accident.
In his deposition, Blanchard indicated that an inspection of the premises was performed the morning prior to Allen's accident. According to Blanchard, he and a friend, Ricky Billiot, performed the inspection, which consisted of walking under, up and down each bleacher. Blanchard testified that the welds were checked by walking on the bleachers. If one of the boards in the bleachers would wobble that would indicate a problem with a weld. During the inspection, Blanchard stated that he checked the railing bordering the back of the bleachers visually and by shaking the pipes to determine if any welds were loose or broken. Blanchard testified that his inspection on the morning of August 3, 1996, did not indicate any problems with the railing or welds bordering the back of the bleachers.
We agree with the trial court and find Blanchard's testimony established that he did not have knowledge that the weld was defective and that he exercised reasonable care in inspecting the seating area and railing prior to Calvin Allen's fall and injury. The plaintiffs did not produce any factual support that the defendant knew or should have known that the weld was defective.
In opposition to the motion for summary judgment, the plaintiffs attempted to argue that the doctrine of res ipsa loquitur applied to this case. As the supreme court noted in Cangelosi v. Our *709 Lady of the Lake Regional Medical Center, 564 So.2d 654, 660 (La.1989), the principle of res ipsa loquitur is a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses. The doctrine applies only when the facts of the controversy "suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. Application of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that was due to his negligence." Cangelosi, 564 So.2d at 660 (quoting Montgomery v. Opelousas General Hospital, 540 So.2d 312, 319 (La.1989)).
We reject plaintiff's argument concerning the application of the doctrine of res ipsa loquitur because the facts presented do not suggest negligence on the part of the defendant as the most probable explanation of this accident. Rather, the facts presented clearly negate the element that Blanchard knew or should have known of the defective weld. Calvin Allen, who testified in his deposition that he had welding experience, acknowledged that a defective weld might not be noticeable by purely visual inspection. Not only did Blanchard's deposition testimony establish that he had no knowledge of any defect in the weld prior to Allen's accident, it also established that Blanchard took reasonable care to inspect his premises before the event in question, by physically testing the rails at the top of the bleachers when he tried to shake them to determine if there was a loose or broken weld. Under these circumstances, we cannot say that the facts suggest Blanchard's negligence as the most plausible explanation of this accident. Accordingly, we reject plaintiffs' attempt to rely upon the application of res ipsa loquitur.
Finally, we note that the plaintiffs raised the issue of spoliation of evidence at the hearing on the motion for summary judgment. We note at no time did the plaintiffs raise spoliation of the evidence in their pleadings. However, the plaintiffs charge that the defendants destroyed all the evidence indicating whether Blanchard knew or should have known of the dangerous condition of the weld and surrounding area.
We disagree. Defendants presented uncontroverted testimony from both Blanchard and Calvin Allen that indicated there was no noticeable defect with the weld or the surrounding area. Blanchard's deposition testimony indicates he shook the railing to determine the strength and condition of the welds prior to the August 3, 1996 event. Moreover, Blanchard's own deposition testimony revealed the identity of another witness who assisted in the inspection. However, plaintiffs presented no contrary statement from this witness.
The presumption of spoliation is not applicable when the failure to produce the evidence has a reasonable explanation. Randolph v. General Motors Corporation, 93-1983, p. 11 (La.App. 1st Cir.11/10/94), 646 So.2d 1019, 1026, writ denied, 95-0194 (La.3/17/95), 651 So.2d 276. Blanchard testified that he repaired the weld the day following the accident in order to get his arena back in working condition as quickly as possible. There is no evidence to suggest Blanchard knew suit would be filed by Calvin Allen seeking damages for his injuries. We find such an explanation entirely reasonable and reject any argument that the spoliation doctrine should defeat the granting of the motion for summary judgment.

CONCLUSION
Based on the foregoing, we find that the trial court properly granted the defendant's motion for summary judgment. The plaintiffs presented no facts that would create an issue of whether Blanchard *710 had personal knowledge of a defective weld or that he failed to exercise reasonable care in inspecting the premises prior to Calvin Allen's accident such that he should have discovered any defective weld. The decision of the trial court is affirmed and all costs of this appeal are assessed against plaintiffs, Calvin Allen, individually, and as tutor of his minor son, Corey Allen, and Phyllis Allen.
AFFIRMED.
NOTES
[1] Hon. Ian W. Claiborne, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] LSA-C.C. art. 2322 provides:

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
LSA-C.C. art. 660 provides:
The owner is bound to keep his buildings in repair so that neither their fall nor that of any part of their materials may cause damage to a neighbor or to a passerby. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.